## DEVLIN *vs.* WOODGATE.

The defendant having employed one C. to excavate a vault, in front of his house, C. hired the plaintiff to do the work. The plaintiff commenced the job, and after working one day, he went to the defendant and declined going on with the job, unless the latter would promise to pay him. The defendant told him to go on and finish the job, and "he should be paid." *Held,* that the promise was an original and not a collateral undertaking, and was not void by the statute of frauds, but was valid and binding; it not being a promise to answer for the debt or default of C. the contractor, but an absolute promise to pay the plaintiff for a job of work done and to be done, on the premises of the defendant and for his benefit. INGRAHAM, J. dissented.

THIS was an appeal from a judgment entered upon the verdict of a jury, after a trial at the circuit, in an action for work and labor. The jury found in favor of the plaintiff, and the defendant appealed.

WELLES, J. The plaintiff's evidence tended to show that on the second day after he commenced working for Cavenagh, he refused to continue the work for him, or at all, except upon the faith of the promise of the defendant to pay him for it. The plaintiff swears on his direct examination, that the defendant told him to go on with the work, and that he should be paid. He says, also, that Cavenagh was the contractor, but that he did not like to go on for him, and refused to go on till defendant promised to pay him. It does not appear what the plaintiff's contract with Cavenagh was,

Devlin v. Woodgate.

except that he commenced the work in question under a bargain with Cavenagh. The reason why he refused to go on and do the work under that bargain, appears to have been that he had become satisfied that he should not get his pay from Cavenagh. Whether the plaintiff was bound by his contract with Cavenagh to do any particular amount of work for him does not appear ; and if it did appear that he was under a legal obligation to Cavenagh, I do not perceive how it could affect the question between these parties. If he, the plaintiff, had violated his contract with Cavenagh, and with or without sufficient cause had refused to go on with the work for him, it was entirely competent for him to enter into a contract with the defendant to do the same work which he had contracted with Cavenagh to perform ; and if the defendant, under such circumstances, requested him to perform the services, and promised to pay him, it was an original and not a collateral undertaking, and the defendant would be liable to him for the work done under such contract. The work was done on the defendant's premises, and it is fair to presume it was for his benefit. There is nothing in the plaintiff's evidence adverse to this view, excepting that the plaintiff afterwards signed and made oath to an account for this work against the defendant, under the advice of counsel, with a view of making the defendant's property liable under the mechanics' lien law. This was not an estoppel *in pais*. It was at most matter of evidence for the consideration of the jury, upon the question whether the defendant was originally liable. The defendant explains how he came to make out and swear to the account against Cavenagh, and the explanation which he gives tends to relieve the act of any unfavorable influence upon his claim upon the defendant.

The defendant was a witness in his own behalf, and positively denied that he employed the plaintiff to do the work in question, or promised to pay him for it. The question was therefore eminently one for the jury, who, it seems, have given credence to the plaintiff's testimony and disbelieved the

defendant.   No complaint is made of any error in the judge's charge to the jury.

I am therefore of the opinion that the evidence would warrant the jury in taking the view above suggested in favor of the plaintiff; in which case the defendant's promise was not within the statute of frauds requiring certain agreements to be in writing, and that the judgment and orders appealed from should be affirmed.

SUTHERLAND, J.   Whether the defendant told the plaintiff to go on and finish the work and he should be paid, as the plaintiff testified, was a question of fact, which appears to have been fairly submitted to the jury; and we must assume from their verdict, that they gave credit to the plaintiff and not to the defendant; and that the defendant did so tell the plaintiff, and that he, as he substantially testified, would not have gone on with the work had not the defendant promised to pay him, or see him paid.

The question in the case, then, is the question of law, whether this promise not being in writing was void by the statute of frauds?   I think the promise was not within the statute, and was valid.   It was not a promise to answer for the debt or default of Cavenagh, the contractor, but an absolute promise to pay the plaintiff for a job of work just commenced and to be finished on the premises of the defendant, and *for his benefit.*

The job of work was the excavation of a vault in front of the defendant's house.   The plaintiff had been employed by Cavenagh, the contractor with the defendant, to do it.   It must be assumed from the case, that the plaintiff was to be paid for the job when the work was finished.   The plaintiff commenced and worked one day.   Not being willing to trust Cavenagh, the day after, he goes to the defendant and declines going on with the job unless the defendant will promise to pay him; and the defendant tells him to go on and finish the job, and "he should be paid."   This is, I think,

Devlin *v.* Woodgate.

a fair statement of the case, which presents the question of law.

As it must be assumed that by the agreement between the plaintiff and Cavenagh the plaintiff was to be paid for the work as one job when it was finished, Cavenagh was not indebted to the plaintiff even for the one day's work performed when the defendant made his promise to the plaintiff. If the plaintiff, without reasonable excuse, had then abandoned the job, he could not have recovered of Cavenagh for the one day's work. The defendant's promise then was not a promise to answer for the *debt* of another, even as to the one day's work performed. For the work to be performed, of course no *debt* existed when the defendant made his promise. The question then is, was the defendant's promise a promise to answer for any default of Cavenagh in not paying the plaintiff, or was it an absolute promise to pay the plaintiff, or to see that he was paid? The work was for *the benefit of the defendant*. The money for the work was to be paid by the defendant, either to Cavenagh or to the plaintiff. Did the defendant intend to pay over the money to Cavenagh, and then by his promise undertake that Cavenagh should pay the money to the plaintiff; or did the defendant by his promise undertake to pay the money directly to the plaintiff without its going into Cavenagh's hands? I think the latter, and that the plaintiff had a right to suppose that such was the defendant's intention. I think the plaintiff, from the promise made, under the circumstances, had a right to rely upon the defendant's retaining from the contract price with Cavenagh sufficient to pay him. In my opinion, the promise should be considered an absolute promise to pay the plaintiff, and not a promise that Cavenagh should pay the plaintiff.

I therefore concur in the conclusion to which Judge Welles has arrived.

If A. B., a stranger, having no interest in the work, had promised, under the circumstances, that the plaintiff should

be paid, it is quite clear to me that the promise would have been within the statute, and void. But here, the work was in fact done for the defendant; and I think the promise should be considered merely a promise to pay for work done and to be done for him, not collateral, but direct and absolute.

INGRAHAM, J. dissented.

Judgment affirmed.

[NEW YORK GENERAL TERM, May 27, 1861. *Ingraham, Welles* and *Sutherland,* Justices.]